Ms. Watson, would you call our first case please? 16-0336, People v. Chauncey, Georgia. All right. Will counsel please approach and tell us your names and who you represent? Good morning, Your Honors. Brent Jarkus, I'm the Office of the State Health Defender, on behalf of the defendant appellant, Chauncey. Good morning. Claire Wesley Connelly, I'm an Assistant State's Attorney, and I represent the People of the State of Illinois. All right. And Mr. Cherka, how much time would you like? It's my intent to keep the opening to about 15, say about a half hour. Okay. And I'll tell you both that we have read the briefs, we're very familiar with your arguments, and so you don't need to spend a lot of time on the facts. And on behalf of the State, how much time would you like, Ms. Connelly? I don't anticipate needing more than 15 minutes in response. All right. And Mr. Cherka, would you like to proceed please? Good morning again, Your Honors, and may it please the Court. I do plan to address this morning the first three issues in the briefs and stand on the briefs for the purposes of sentencing. Of course, I'm happy to address any questions the Court has about sentencing, if the Court has any. But turning right to reasonable doubt. The State failed to prove Mr. Roe be guilty beyond a reasonable doubt where it failed to present sufficient evidence from the forensic analyst that she properly tested samples from all four baggies that comprised the total 1.6 grams of substance. Why can't we infer that Powell tested a sample from each of the four baggies? I think there's one main reason that we can't infer that, and that really speaks to her testimony at page Q65 of the record. So Ms. Powell testified that, quote, the confirmatory test confirmed the presence of heroin in the sample, and then on that same page the State asked her, quote, was the sample from those four baggies. So she repeatedly testified about the sample that she tested in the singular, and it's our position that that testimony really casts a cloud of ambiguity over the remainder of her testimony about the conclusions that she drew from the testing. She did testify that she put the four samples in four separate bowls, and she tested them for weight each individually, and then she tested the color individually. And so why would all of a sudden she just be testing the sample rather than all four? That was the question. Because the word the, the word the is there, that means she didn't test all four? So I think describing the samples in the singular is important, and that really goes to what we've set up as the conflict in this case between people versus Clinton and people versus Hardin. So in both Clinton and Hardin, the forensic analyst testified that he or she analyzed the sample in that case in the singular. And in both Clinton and Hardin, the analyst had testified that he or she tested, separated the samples for the purposes of weighing. And then the court in Clinton found that because there was ambiguity as to whether or not the sample, the sample in the singular was ultimately commingled or had been tested separately, that the court would not presume following our Supreme Court's decision in people versus Jones that the sample had been tested properly. And then the court in Hardin, which we urge this court not to follow today, decided instead to presume the opposite and to decline to presume that improper testing procedures had been done, even though it recognized that there was an ambiguity based on the forensic analyst's testimony as to whether or not the 20 bags in that case had been tested separately or commingled. When was the forensic chemist doing this testing? This is a 2014 case, right? Yes. When was she doing the testing? I don't recall a specific date from her testimony. My guess is that it was not, given the nature of how these cases proceeded, it wasn't probably immediately prior to the trial. But I don't remember from the record exactly. Okay. And Clinton was decided when? Clinton was decided in 2010. Okay. I see a 2009. Oh, that's a typo. I'm sorry. It was 2009, yes. Okay. And Hardin was decided in 2011. In 2011. Okay. So in 2014 or later, when this forensic chemist is doing this testing, the State would have been aware of these cases, right? Yes. And we have a very careful forensic chemist who is weighing out in the four weight boats and doing the color sample in the four weight boats. And because she uses the singular of sample, you want us to infer that she did it wrong and she only tested one. I don't think we need the court to infer that she did it wrong. It's just that we can't infer anything because it's ambiguous as to how she ultimately tested the sample that she said that she tested. And I think looking at People v. Jones, which was from 1996 in our Illinois Supreme Court, there the chemist also kept the sample separate for the purposes of weighing, but ultimately only tested two of the five. And so we know from People v. Jones that even where analysts are careful at the beginning of the testing where they're weighing the sample and at the end where they're repackaging it, somewhere in the middle things can go wrong, as they did in People v. Jones. And so where it's not clear from the analyst how she ultimately tested the sample, it's our position that Clinton more faithfully applies People v. Jones and declines to fill in the gaps in the state's evidence in the forensic analyst's testimony and holds the state to its burden to prove beyond a reasonable doubt that the forensic analyst properly arrived at the ultimate weight of the substance, which of course was essential in this case. Did defense counsel have any obligation to clarify? I don't think so, and that's another one of the reasons that we're urging this court to reject Hardin because it's our position that Hardin really shifted the burden in an improper way. So it's not defense counsel's obligation to object in the case where we're talking about a reasonable doubt challenge. There's obviously no forfeiture issue in this case. And it's also not defense counsel's obligation to cross-examine in a way that might signal the status to the weakness of its case. If defense counsel observes an examination of a state's witness and comes to the conclusion that that testimony is insufficient, counsel is more than entitled to allow the state's evidence to fall on its own sword where that evidence is insufficient. And so it's our position that Hardin really improperly shifts the burden from the state to present affirmative evidence that the forensic analyst properly tested the sample to the defense to ultimately prove, to essentially prove a negative that the analyst did not properly test the sample. And so because it's our position that the court in Clinton more faithfully applies our Supreme Court's instructions in People v. Jones, we would urge this court to follow Clinton and to not construe an absence of testimony in a light most favorable to the state where we really don't know how Ms. Powell tested the sample even though she kept it separate at the beginning and re-separated it at the end. But even if this court can say that the evidence was sufficient, that determination was ultimately for the jury, but they were deprived of the instruction as to the lesser-included offense of possession with intent to deliver less than one gram. And that turns to the ineffective assistance claim. And it's our position that counsel was ineffective for failing to tender the lesser-included instruction on possession with intent to deliver less than one gram. And as we've been discussing this morning, it was and remained at all times the state's burden to prove beyond a reasonable doubt the essential element of weight in this case. And that bedrock principle really informs both the prejudice and deficiency prongs of the Strickland analysis here. So it's important to remember that for the purposes of presenting evidence, defense counsel had not stipulated weight out of the case. Defense counsel had held the state to its burden to bring in a live witness to present evidence to the jury and then ultimately send that witness's testimony back to the jury room for the jury to deliberate. But what defense counsel failed to do was to provide the jury the legal framework within which to analyze that testimony. So the jury was completely unaware at the time that it was deliberating that if it had doubts about the forensic analyst's testimony but had believed the state's evidence as to intent, that there was either a legal instruction or a verdict form that would have reflected that specific belief. And so defense counsel's decision not to at least tender the instruction where she had not otherwise stipulated weight out of the case was ineffective because it deprived the jury of a chance to evaluate the state's evidence in the way that they were supposed to. And that also informs the deficiency analysis because there was really no strategic reason to not hold the state to its burden to prove every element beyond a reasonable doubt in this case. The lesser included instruction would not have contradicted Mr. Roby's testimony. The state correctly notes that Mr. Roby had testified to the possession of the four packets of heroin. But nowhere in Mr. Roby's testimony does he explain at all how much he even suspected that those four baggies weighed. But he did, his theory in the case was that it was for his own personal use. That's correct. So how does that not contradict an instruction that says he had it and he intended to sell it? Well, it doesn't contradict the instruction in the same way that it doesn't contradict the instruction for possession with intent to deliver 1 to 15 grams. It's just the lesser included that would have allowed the jury to evaluate each and every element, intent as well, but also the weight of the drugs, where defense counsel, again, had not stipulated the weight out of the case. And I think this also speaks to the fact that the decision to tender a lesser included instruction in this case would not have contradicted counsel's primary theory, which was that Mr. Roby did not intend to sell. There's nothing that would have prevented defense counsel from alerting the jury to the fact that there were essentially three distinct elements, the possession, the weight, and the intent that the state had to prove beyond a reasonable doubt, and then telling the jury these are the elements, the state has the burden, this morning I'm going to focus your attention on the element of intent because, of course, that would have gotten Mr. Roby the greatest relief if the jury had believed that. So it's not a challenge necessarily to counsel's global strategy to focus the jury on intent, but it was not a reasonable strategy choice to essentially take away one of the elements from the jury when they're evaluating the state's evidence in this case. And so it's our position that that warrants a new trial based on the ineffectiveness because there was no strategy reason that justified not tendering the instruction, and not tendering the instruction deprived the jury of its core function to evaluate every element that the state was required to prove beyond a reasonable doubt. But there was at least one other reason to remand for a new trial, and that goes to the state's rebuttal argument. There was no evidence presented in this case that Frank Edwards was anything but an innocent passerby, unwittingly caught up in Mr. Roby's arrest. And pointing to him as the buyer in our position was, in our view, was reversible error. But in closing, Mr. Roby's counsel argued just that. Here Mr. Edwards is just walking down the street, innocent bystander, and for no reason at all he's swept up in this overly aggressive police conduct. But the evidence showed, and again, it was the jury's province to believe or disbelieve it, that Mr. Roby was standing on the sidewalk yelling, blows, blows, and the only person within earshot was Mr. Edwards. So why isn't it fair for the state to respond in rebuttal that Edwards was his targeted buyer? I think for two reasons. And one is that the defense counsel's argument was, in our view, a faithful recitation of the evidence that was actually presented. And so in order to respond to defense counsel's argument, the proper response, and we pointed this out in the briefs, would have been to say that in order to prove intent, the state is not obligated to present the jury with an actual transaction or potential transaction. It was not to distort the evidence to describe it in a way that did not faithfully present what the evidence actually showed. But it was, we're talking about Mr. Roby's intent. Yes. And as far as Mr. Roby was concerned, it's fair to say that his intended buyer was Mr. Edwards, right? I don't think so. And I think that goes to both of the officers' testimony about what had not occurred that day as they observed it. Neither officer, both officers testified and neither officer observed Mr. Roby talking to Mr. Edwards. Neither officer observed Mr. Roby approaching Mr. Edwards or vice versa. Neither officer observed Mr. Roby or Mr. Edwards engaging in any sort of transaction. But that begs the question. I mean, he still could be the person that Mr. Roby was signaling, I'm selling drugs by saying, you know, blow is blow. I think the problem with that is that it becomes far too speculative. And it's anyone that was out on the street. Your Honor is correct that Mr. Edwards was the only one at the time. But anyone out on the street then would be fair game for the state to describe as a buyer. And the great weight of the evidence actually suggests the opposite. Mr. Edwards was searched. He didn't have anything on him. He didn't have a buyer because he was searched. He didn't have anything on him. But 15 feet away and somebody standing, has been alleged to be standing in the park looking for buyers, sees somebody coming close, he would yell out. Why wouldn't that indicate that he was selling? I think there's a couple more facts also to take into account. So Mr. Roby, pursuant to the officer's testimony, was off of the sidewalk. Mr. Edwards was walking on. If Mr. Edwards was going to walk towards Mr. Roby, he would have had to leave the sidewalk if he was going to conduct a transaction. And up until the point where he became level with Mr. Roby, if he was just walking on the sidewalk, of course he would be walking towards Mr. Roby. And that's true whether he was walking on the sidewalk or about to engage in a potential drug buy. But the police stopped the whole deal before. He was 15 feet away when the police came out of the car. That's right. And in order to fairly describe Mr. Edwards as a buyer, there needed to be some more observation of what was ultimately going to happen between Mr. Roby and Mr. Edwards, if anything. The jury knew no transaction took place. I mean, that was the defense argument. The police didn't see anything. To see anything changed hands. So, again, I'm having a hard time seeing how this is improper closing argument. Sure. So, again, it's our position that it's improper because it's not supported by the evidence. Your Honor's question seems to be going more to the issue of prejudice and how this affected the jury's view of the evidence. And correct me if I'm wrong. But it's our position that there was prejudice here because the state was really providing the jury with this concrete narrative that didn't otherwise exist. In a case where the only other evidence of intent was the disputed testimony about whether or not Mr. Roby was yelling blows. And so where the evidence was so thin as to the issue of intent, the state really pointed the jury to the specific transaction that was about to take place and sent them back into the jury room with this specific person in mind, this specific buyer in mind, even though the evidence had not supported the conclusion that Mr. Edwards was anything but a person walking on the street in the vicinity of Mr. Roby. And that really transitions well into the plain error analysis, I think. And so we've argued that this is plain error because the evidence was closely balanced as to the issue of intent. And, again, it's our position that the only evidence in this case of intent was the disputed testimony that Mr. Roby was yelling blows, blows. The officers testified he was. Mr. Roby testified he wasn't. And that is where People v. Seve, I think, becomes very important. Because our Supreme Court in Seve made very clear where there are two conflicting narratives of an event and neither is inherently fanciful, and that is the quintessential case of close evidence. No, no. Seve says if neither is corroborated. And the police version was corroborated by the fact that Mr. Roby was in possession of several packets packaged for sale of what was later determined to be narcotics. Well, so two points, I think, in response to that, Your Honor. The first is that Mr. Roby had testified he admitted possession. So the fact that he was in possession of four baggies doesn't actually speak to the issue of intent. And I think it's critical, when thinking about how the narcotics or the substance was packaged in this case, to remember that Mr. Roby had just purchased them. So this Court should find it, in my view, unremarkable that the drugs were packaged for sale. That's according to his testimony. I had just bought them for my own use. See, but Seve doesn't say, at least I don't understand it to say, whenever the jury has to draw a credibility judgment, the evidence is closely balanced. That would be in almost every case. So that actually is how I read People v. Seve, because it reaffirmed the Illinois Supreme Court's prior decision in People v. Naylor, which comes out and almost explicitly says that a credibility contest is the quintessential example of close evidence. Now, that wouldn't be the case if there had been some physical evidence corroborating either one of the parties, or if Mr. Roby had, for example, given a statement that the State was able to introduce that admitted an intent to deliver the heroin that he was in possession of. But my reading of Seve is that where there are two conflicting narratives, neither of which are independently corroborated by anything, and again, as we've discussed, it's argued that the package for sale does not independently corroborate either narrative, well, the officer's narrative. On the other hand, defense counsel said that with regard to Edwards walking down the street and the police officers observing, more likely scenarios, the officers were acting in a nudge. Well, they're making that argument. That's the fence. So why can't the prosecution come back and say, it wasn't, it was more than a nudge. I mean, here's what was going on. They're just giving a reverse picture of what was described by defense counsel. Well, to give a reverse picture would have been to accurately describe the evidence. In this case, what the State did in rebuttal was to take the evidence that didn't support an ultimate conclusion that it drew for the jury. The State's argument drew a conclusion about what Mr. Edwards and Mr. Roby were doing or about to do that wasn't supported by the evidence. And so it wasn't a proportional response to defense counsel's argument that the officers were acting on more than a hunch in a case where there was such disputed testimony about what Mr. Roby was even doing out on Madison that day. And so for any further questions, we would ask the court to reduce the conviction or the alternative remand for a new trial or re-sentence. All right. Thank you, Mr. Kerr. Thank you. Ms. Connelly? May it please the court, counsel. The evidence in this case clearly established that the forensic chemist tested the contents of each of the four bags of heroin found in the defendant's possession, that the contents of each bag tested positive for heroin, and that the weight of the heroin tested positive for 1.6 grams. As far as the weight? Well, if the record reflected that the forensic chemist said, and each sample that I tested that I had separately weighed I found to contain narcotics, we wouldn't be here on this issue. Do you agree that the record is somewhat ambiguous on it? I don't think there is any ambiguity. That's what the defense counsel's theory is. I don't feel that there's any ambiguity in this. As far as the weight, she's right. Let's not talk about the weight. Okay. That's not what the ambiguity is about. Let's get down to what the ambiguity is about. The question was, and tell the ladies and gentlemen of the jury what the results were from the confirmatory test that you ran. Answer. The confirmatory test confirmed the presence of heroin in the sample. Question. And was the sample from those four bags, is that accurate? Yes. In no place did she say that she took a sample from each of the four bowls. But in Hardin it explains that we don't look at these comments that the forensic chemist makes and we view them in their entirety. So moving on. We don't have to follow a conclusion. It's something else. She clarifies her remarks later on when she talks about her conclusions in this case. In the record it says, Ms. Powell, based on your training, education, and experience in the field of drug chemistry, this is on page Q66, the tests that you performed on this exhibit and those four baggies, do you have an opinion with a reasonable degree of scientific certainty as to the presence of controlled substance within those four baggies? Answer. I came to the conclusion that there was heroin contained in these four items. That doesn't answer the question. Yes, in my mind it does. It clarifies that she tested each of these, that she did the two tests. It doesn't say that enough. And she tested each of the four contents. You have to recall when I talked about the weight, when she explained how she did the weight, she said she put each of the four baggies in individual boats. So she had to have been able to take a sample from each of the four bags. She did not have to. That's the problem. You're assuming she had to, but she doesn't, and she didn't say that. But she says I came to the conclusion there was heroin contained in these four items does not necessarily mean that she just tested one sample, the sample. And from that she extrapolated and said there was heroin in all four. That is a problem with this line of questioning and that it's ambiguous. Well, I think when she uses the word the sample, I think it's more of a generic term that chemists may use in this case. Well, where is that case? I mean, that's not what the Supreme Court has said it before when the use of the word the has been used. So I don't know where that's coming from, but I do know that that was the word she used and it was not the word that was used in the question. So when she said the sample, that means one sample in English language. And it's our position that she clarified if there was any ambiguity in this case, that ambiguity was clarified when she made her conclusions clear that the tests that you performed on this exhibit and those four baggies. That doesn't clarify. There were three tests, okay? That doesn't clarify that she ran them on each of the four baggies for each of the three tests. Well, the test is to use the word test. She did not use the singular test. No, she did three tests. And this was in her conclusion as to what her professional opinion was in this case. But that still doesn't answer the question with regard to whether she, in fact, on the third test, looked at each of the four bowls or just one bowl because she said the sample. She didn't say sample. And we submit that that is sufficient for her to establish that she conducted all three tests. Well, we have to infer that, right? Don't we have to infer that? Well, that's what we're allowed to make inferences from the record. That's what a trial fact does. They make inferences. This goes to the heart of the case. The case to prove this case is to prove there was hair on each of the four baggies. Correct. And if this is ambiguous, then we can't infer from that what she did. Well, even if this court were to find there was any ambiguity, this court will not presume that an improper procedure was performed. This court is not required to draw only inferences that favor the defendant in this case. And this is the perfect example. This is an effect that is best left to the trial fact for proper resolution. Now, what about Clinton? People who visited Clinton. Well, Clinton, there was clearly she had commingled. They took all the objects when they were weighing it, and they put it all together. This is not a commingling case, as Your Honor pointed out before. The weight was fine. How she did the weighing procedure was entirely appropriate. That was the concern in Clinton. There was commingling. There is no commingling. There is no allegation that there was any commingling. What in this case is they're saying they just didn't test all four packets. Right. These four packets were separate. And the courts have said they need to test all four packets. Correct. Correct. So any reliance that the defendant has on Clinton is misplaced in this case. Oh. So, and as defense counsel pointed out, defense counsel at trial did not object at any point to any of the testimony in this case. And that's what the court in Harding looked at to determine whether or not there was any ambiguity in this case. Therefore, this court, we ask this court to affirm the defendant's conviction for a Class I offense of possession of a controlled substance with intent to deliver between 1 and 15 grams. Is there any words that the witness, Powell, used that would show that she tested more than one sample for the third test, the heroin test? As I pointed out, in her, she said she tested each of these four packets because she placed, and then after she was done with her testing, she placed each of these items in its own individual bag. She had all four bags out when she tested them. There is no evidence that she did not test all four bags. She never testified to that. Alternatively, defendant asks this court, even if it finds that the evidence was sufficient to establish the weight element for a Class I offense, that it should reverse their demand for a new trial because this same exact evidence that this court has already found to be sufficient to merit a Class I offense also provided some evidence to justify a lesser-included instruction for a possession of a controlled substance with intent to deliver on a Class II offense. By doing so, he cannot establish the prejudice prong of ineffective assistance of counsel. Counsel cannot be ineffective for failing to give the jury the option to find the defendant guilty of a Class II offense when this court has already found that this same exact evidence regarding the weight element was sufficient to establish the defendant guilty of a Class I offense. Moreover, defendant cannot establish that his trial counsel was ineffective for failing to request a lesser-included jury instruction. There is no evidence to support it, and it contradicted the defendant's own trial testimony. Defendant is entitled to a lesser-included jury instruction where there is some evidence, even slight, which, if believed by the jury, would reduce the crime to a lesser offense. Defendant here cannot establish that there was some evidence to support this theory. In fact, if the court reaches this, you have to get to the point where you've already assumed the defendant has established a Class I offense and the evidence was overwhelming. There is no prejudice in this case, and the defendant hasn't established also the first prong of Strickland. And this evidence, as I point out in my brief, would have contradicted the defendant's own trial testimony in this case. The defendant testified that he had purchased five bags of heroin, snorted one, and did not ever testify that the effects of that, that he did not feel an unusual effect like he didn't already have from heroin. He didn't say, oh, he didn't have an effect from that. His theory on trial was that those were four bags in his possession that he was going to use and that there was no testimony that these did not contain heroin in this case. Turning to the next issue, defendant's claim of prosecutorial error in the rebuttal argument is mirrorless, where the prosecution did not make any statements outside the bounds of appropriate comment. First, defendant forfeited this issue, so must prove that there was a clear and obvious error. However, there was no clear and obvious error in this case. The prosecutor's reference to Frank Edwards, the person who was walking towards the defendant when the officers approached, while the defendant was yelling, blows, blows, was properly based on the evidence for a reasonable inference drawn upon it. The two officers who testified in this case, Officer Acevedo and Officer McCarthy, Officer Acevedo was an experienced narcotics police officer and he heard defendant yelling, blows, blows, standing on a street corner, knowing that the defendant was soliciting for the sale of heroin. When another person, Frank Edwards, appears to be walking towards the defendant from a distance of only 15 feet away when the officers approached. But he might just have been walking down the street. He could have walked right by Mr. Roby. Correct. Not buying anything. But it's a reasonable inference and that's all we have to establish. And admittedly, they searched Mr. Edwards and he did not have any heroin in his possession. But it's a reasonable inference that the officers had, based on the officers' testimony, that Mr. Edwards was a potential buyer for the defendant. And that's why the defendant was standing out there yelling, blows, blows, when Mr. Edwards was approaching. He was soliciting or targeting Mr. Edwards for the sale of narcotics. Well, actually, he was soliciting or targeting anybody within hearing range. Correct. It just stands that Mr. Edwards was the closest one. He was the closest one. There's no evidence that there was anybody really else in the general area that I recall. But Mr. Edwards was close. There might have been people in cars with their windows open or something. Yeah. The police officers were in an unmarked car. Correct. And they heard it. Yes, they heard it. It could have been them. Exactly. Exactly. And they were in an unmarked car, and they were in plain clothes. But that was not argued here. The argument in this case was that Mr. Edwards was a potential target for the defendant. And that just corroborates. So the defendant, it's just as probable that it would have been the officers as it would be Edwards? Right. What would it have taken? It could be anybody. I mean, if he's just yelling it out, why wouldn't it necessarily also be the officers? Right. It could have been us. If that was not our theory and that was not presented at trial and that was not argued. But the important part and the important thing that we relied upon is that the defendant was standing out there yelling, blows, blows. And that was the evidence that established the element of intent to deliver in this case. Would it make a difference if there was nobody out there? Hypothetically. No. In my mind, the evidence that we needed to establish the intent to deliver was him yelling, blows, blows. The fact that there was someone out there corroborates it to a slight extent, but it wasn't necessary for us to establish that there was a potential target out there at the time. You know, it's whether or not the defendant had that intent. Right. And that was him yelling, blows, blows. So, and as Justice Mason also pointed out, this wasn't by the comment. It was said in response to defense counsel's closing argument, in which he asserted that the defendant was not selling drugs that day, that he had merely purchased the drugs, and there was no evidence to suggest that Frank Edwards had purchased drugs from the defendant. So this was proper for the prosecutor to respond to this in rebuttal based on the defense counsel's comments in this case. And the evidence I would submit was not closely balanced in this case. Both police officers testified that they heard the defendant yelling, blows, blows, from the open window of an unmarked squad car, so the defendant was not suspecting that these were police officers who were driving by. They saw this from a distance of about 20, 30 feet away, while the defendant was standing on a street corner, and he was found in possession of the four bags that he was yelling. It was blows, blows, which means heroin, and he was found with four bags of heroin in his possession, which corroborated the fact that he was out there yelling that, and he also had $67 in his possession at this time. You have to balance that against the defendant's testimony in this case. The defendant's testimony is, despite the fact that he's purchased narcotics over 100 times, he claimed he didn't even know what the phrase, blows, blows, meant. Therefore, the evidence in this case was not closely balanced, and neither was it not so serious that it affected the fairness of the defendant's trial or it challenged the integrity of the judicial process. That was not established. Therefore, the people respectfully request that the defendant's conviction for possession of a controlled substance with intent to deliver the Class I offense be affirmed. Thank you. Thank you. Mr. Jarka, rebuttal. Thank you, Your Honors. I have just one brief point as to each of the arguments made here this morning. First, to address the exchange between Justice Hyman and my colleague about People v. Clinton. People v. Clinton, the state presented this court with People v. Clinton as a case where the court found that there had been affirmatively commingling. But I would like to point this court to a couple of quotes from Clinton that clear that up. The chemist testified that, quote, he took one item at a time and emptied the contents of foil into a separate weight boat. So the sample in Clinton was not commingled for the purposes of weighing. And that, again, puts it in a similar posture to this case. And then in the supplemental opinion on denial of rehearing, the court both found that it was unclear and that the chemist never stated whether or not he had tested the samples separately or had somehow commingled them. So it's our position that Clinton is just like this case where there's an ambiguity as to whether or not for the purposes of ultimate testing, the analyst had kept the substances separate or had potentially commingled them. The jury heard him testify that he bought five bags of heroin, used one, and was left with four bags of heroin. That's right. So the same jury that heard the forensic chemist say, I tested four weight boats for amount and color and, we believe, substance, also heard him admit that he bought five bags of heroin. That's correct. But the problem is that nowhere in his testimony does he even venture a guess as to how much the heroin that he bought weighs. Well, he also doesn't say, oh, and those were different bags than the cops picked up or caught me with. No, that's correct. And to be clear, this is not a chain of custody question. This is not a question about whether or not. So the jury could reasonably believe if he bought five bags of heroin and used one and was left with four bags of heroin, and that's what the cops caught him with, and that's what the forensic chemist tested, that when she measured him out in the four weight boats and tested their weight, that they would be heroin. That's what the jury could infer from all of it, from those two sets of testimony. So I'd like to parse that out a little bit. So I think it is fair to say that the jury could infer that the contents of the four baggies contained heroin. The problem is we don't know how much that weighed. We don't know whether or not she. . . But we do know how much they weighed. But we don't know how she tested it to get to that conclusion. We do know that she tested each of the four weight bags. I don't think we. . . So they're both in a separate weight boat. She did for the purposes of weighing. So did the analyst in Clinton. So did the analyst in Jones. So did the analyst in Harkin. But in Jones and Clinton, we have the exact same problem here. In Jones, we have the explicit problem of the analyst separating into weight boats. So you think the jury could have inferred that he brought five bags of heroin and that some of them had less heroin in them than others? No, I just think the jury. . . There was no reasonable inference to draw that the analyst properly tested the four baggies that were brought to her. We agree that the same four baggies that the analyst tested were the baggies recovered from Mr. Roby. Okay. But because of the repeated testimony from the analyst that she tested the sample in the singular, the dots between the weighting and her conclusions are not sufficiently connected. Well, wait. You just said we don't know how much weight there was. We do know how much weight there was. Yes. We know the total weight was 1.6 grams. We don't know if she. . . We don't know the weight. Right. We don't know. . . But we know that each of the weight boats, when they did the color test, tested for something. Yes. Okay. And then you're saying that's where it drops off. But that's where I say, well, he picks up the narrative by saying I bought five bags of heroin. I just don't think that his testimony that he bought five bags of heroin fills in the gaps as to whether or not for the purposes of the confirmatory test, the analyst properly tested samples from each of the four baggies to make sure that there was no commingling or no imputation of the test of perhaps one weight boat onto the remaining untested boats. It's, again, the gap in between what we know the analyst did to weigh and what we know the analyst did to repackage is not filled in in this case. Okay. He had four previous felony convictions for drug abuse. Four previous drug convictions. Is that right? I believe that's correct. Two misdemeanors and at least one felony. And the judge knew that. The judge knew that at the time of sentencing. I think it's actually the State's position that the judge did not know that at the time of trial. He testified that at that corner he didn't know what blows, blows means. I don't know. That would have been a credibility determination for the jury to make. Right. The jury heard him. Yeah. And I think this goes to the exchange between the court and my colleague about the prosecutor's rebuttal argument and about what we can infer from the competition between Mr. Roby's testimony and the officer's testimony. I think it's critical to remember that the way Well, they had an instruction, too, that they didn't have to give the officer's testimony more weight than anybody else's. They did. But I think it's critical to remember that the closely balanced part of this case is exactly pointed at the element of intent. The evidence, I don't think we can fairly say, is closely balanced as to whether or not Mr. Roby possessed the heroin. He admitted that he possessed the heroin. But the evidence is closely balanced as to the issue of intent. There is disputed testimony about whether or not Mr. Roby was yelling blows, and then there's no other evidence in this record that reasonably supports an inference that he intended to sell that heroin beyond the officer's testimony that he was yelling blows. Well, the jury apparently believed the officer's testimony. Right. But that doesn't mean that the evidence isn't closely balanced. Counsel, if you had a push cart full of ice cream and you were ringing bells in a neighborhood and there was nobody standing on the street, but then when they heard the bells, kids started to run out, you could assume that that person was trying to sell ice cream. Here's a man who is standing on a street corner in a neighborhood known for drug sales. He's got four packages of something in his pocket. He's yelling blows, blows. To me, I don't see how that's closely balanced. The jury obviously believed the police officers. I think it's important to break that down because the jury – I think Your Honor is correct that the jury on this evidence apparently did believe the officer as to the issue of intent. We know that because they entered a guilty verdict on possession with intent. But the question under SEBI is not whether the evidence was sufficient. It's whether the sufficient evidence was or was not closely balanced. And so even sufficient evidence can be closely balanced. And it's our view – And so when you're talking about closely balanced, you invoke SEBI. SEBI said under those circumstances where there were two versions, two credible versions of events, two credible versions of events, no corroborating evidence for either one, the evidence was closely balanced. And one of those versions of events was consistent with the defendant's innocence. Mr. Roby's version of events is not consistent with his innocence. It's consistent with possession of narcotics, whether he had the intent to sell it or not. So how does SEBI apply? Because the evidence – so the evidence was still closely balanced as to the issue that defense counsel had focused the jury on, which was the issue of intent. So I agree with Your Honor. There was very little way for the jury to enter a conviction on anything that was a complete acquittal. Mr. Roby admitted to possessing heroin. That is absolutely established. But the question about the closely balanced evidence in this case speaks directly to the issue of intent. We're not saying the evidence was closely balanced as to his possession. His own testimony admitted possession. We're saying that the evidence is closely balanced as to whether or not the heroin that he admitted possessing he intended to sell. And based on People v. SEBI, where neither narrative is completely fanciful, we would urge this Court to find that the evidence is closely balanced and that the prosecutor's argument being error warrants reversal in this case. I don't have anything else if the Court has no further questions. Thank you. Thank you for your arguments here this morning and your excellent briefs. We will take the matter under advisement.